# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   MJ20-335 |
| Residence and Person of MARGARET AISLINN CHANNON | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

The person of Margaret Aislinn Channon and the residence described in Attachment A, incorporated by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Tattoos on the person of Margaret Aislinn Channon and for the residence, see Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 844(f) and (i) | Arson |

The application is based on these facts:

✓   See Affidavit of ATF Special Agent Gregory Heller, continued on the attached sheet.

☐   Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

Digitally signed by GREGORY HELLER
Date: 2020.06.11 01:33:50 -07'00'

_____
*Applicant's signature*

Gregory Heller, ATF Special Agent

_____
*Printed name and title*

◯ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   _____06/11/2020_____

_____
*Judge's signature*

City and state:   ___Seattle, Washington___

Michelle L. Peterson, United States Magistrate Judge

_____
*Printed name and title*

**ATTACHMENT A**
**Property to be Searched**

The property to be searched is described as:

The premises located at 8436 South G Street Tacoma, Washington.  This is a single family residence located on the west side of South G Street between S. 86th Street and S. 84th Street.  The residence is light blue with white trim and a dark roof.  8436 is on the trim above the front door.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**
**Property to be Seized**

Records (in whatever form) relating to violations of Arson, 18 USC § 844 (f) and 844(i), that is:

1.  Clothing worn by the suspect during the protest on May 29, 2020, and the arsons on May 30, 2020, including but not limited to:

    a.  Black and white striped scarf/face covering

    b.  Black t-shirt

    c.  Black pants

    d.  Black shoes with brown soles and gold colored grommets around the lace holes

    e.  Pink/peach socks with a red or pink pattern

    f.  Green/grey socks with a triangle pattern

    g.  Black hooded sweatshirt with a vertical zipper in the front

2.  Black backpack with a rectangular top flap which is fastened by vertical black straps.

3.  Aerosol cans.

4.  Lighters.

5.  Receipts for aerosol cans or lighters.

6.  Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises including canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents, and keys.

7.  Evidence indicating state of mind and motive as it relates to the crimes enumerated above, including but not limited to records related to protests occurring in Seattle and other locations during late May and early June 2020.

Attachment B
USAO#2020R00569 – Page 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.  Cell Phones: Cellular telephones and other communications devices including Blackberries and other smartphones may be searched for any and all evidence of the crimes listed above in whatever form, including:

a.      evidence of who used, owned, or controlled the device;

b.      passwords, encryption keys, and other access codes that may be necessary to access the device or to access communication and financial accounts associated with the device;

c.      communications made in furtherance of the crimes enumerated above;

d.      evidence indicating the user's state of mind as it relates to the crimes enumerated above;

e.      evidence indicating how and when the subject device was accessed or used, to determine the geographic and chronological context of device access and use, in relation to the crime under investigation and to the device user;

f.      evidence of the identities of and relationships between co-conspirators; and

g.      photographic or video images related to the crimes enumerated above.

Attachment B
USAO#2020R00569 – Page 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**AFFIDAVIT**

STATE OF WASHINGTON )

) ss

COUNTY OF KING )

I, Gregory Heller, having been duly sworn, state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1. I am a duly sworn member of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I am currently assigned the ATF Field Office located within the Seattle, Washington Field Division. I have been employed as a Special Agent since September 2014. Prior to this employment, I was employed as a Police Officer and Detective for Gwinnett County, Georgia, from 2007 to 2014. In total, I have approximately thirteen years of state and federal law enforcement experience.

2. I am a graduate of Duke University in Durham, North Carolina, where I received a Bachelor's of Science in Engineering (B.S.E.) in Civil Engineering. I completed a twelve week Criminal Investigator Training Program (CITP) and a fourteen week Special Agent Basic Training (SABT) at the ATF National Academy/ Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I also completed a 23-week Gwinnett County Police Training Academy and was a Peace Officer Standards and Training (P.O.S.T.) certified peace officer in the State of Georgia.

3. I am responsible for investigations involving specified unlawful activities, to include violent crimes involving firearms and arsons that occur in the Western District of Washington. I am also responsible for enforcing federal firearms and explosives laws and related statutes in the Western District of Washington. I received training on the proper investigative techniques for these violations. I have actively participated in investigations of criminal activity, including but not limited to: crimes against persons, crimes against property, and crimes involving the possession, use, theft, or transfer of firearms. During these investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating the presence of criminal violations. As a law enforcement

Affidavit of Special Agent Gregory Heller
USAO# 2020R00569 – Page 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  officer, I have testified under oath, affirmed to applications of search and arrest warrants, and

2  obtained electronic monitoring orders.

3      4.      I make this affidavit in support of an application under Rule 41 of the Federal

4  Rules of Criminal Procedure for a warrant to search the following:

5          a.      The premises located at 8436 S. G Street, Tacoma, Washington,

6  hereinafter "the premises to be searched," further described in Attachment A, for the things

7  described in Attachment B.

8          b.      The person of MARGARET AISLINN CHANNON, for tattoos.  This

9  search will be conducted solely through taking photographs of Channons's tattoos.

10      5.      As set forth below, I have probable cause to believe that the PREMESIS and

11  the person of MARGARET AISLINN CHANNON will contain evidence of Title 18, United

12  States Code, Sections 844(f)(1) and 844(i) (Arson).

13      6.      The facts set forth in this Affidavit are based on my own personal knowledge;

14  knowledge obtained from other individuals during my participation in this investigation,

15  including other law enforcement personnel; review of documents and records related to this

16  investigation; communications with others who have personal knowledge of the events and

17  circumstances described herein; and information gained through my training and experience.

18  Because this Affidavit is submitted for the limited purpose of establishing probable cause in

19  support of the application for a search warrant, it does not set forth each and every fact that I

20  or others have learned during the course of this investigation.

21          **SUMMARY OF PROBABLE CAUSE**

22      7.      On this same date, I executed an affidavit in support of a Criminal Complaint

23  in the matter of *United States v. Margaret Aislinn Channon*.  The Criminal Complaint is

24  attached hereto as Exhibit 1, and is hereby adopted and incorporated as if set forth fully

25  herein.

26  **A.      Channon's Connection to the Residence to be Searched.**

27      8.      According to the records of the Washington Department of Licensing (DOL),

28  beginning on December 17, 2018, Channon listed as her residential address 920 E. Fir Street,

Affidavit of Special Agent Gregory Heller
USAO# 2020R00569 – Page 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Seattle.  Beginning shortly before that, on September 17, 2018, Channon's mother also listed

2   the 920 E. Fir Street address as her residence.  Based on property records, I believe this

3   address to be a rental house and it appears that both Channon and her mother previously

4   resided there.

5       9.    Based on the review of King County property records, I am aware that on

6   May 23, 2020, Channon's mother purchased a house in West Seattle.  On May 28, 2020, she

7   changed her residential address on file with DOL to the West Seattle address.  Similarly, on

8   April 9, 2020, Channon changed her mailing address on file with DOL to the house located

9   at 8436 S. G Street, Tacoma, Washington (the premises to be searched).  Based on these

10  circumstances, I believe that during the Spring of 2020, both Channon and her mother moved

11  out of the rental house on E. Fir Street and into their respective new residences – the

12  premises to be searched (for Channon) and the West Seattle house (for her mother).

13      10.    On April 18, 2020, nine days after Channon changed her DOL mailing address

14  to the premises to be searched, she posted over one of her social media accounts a video

15  depicting a woman with a tattoo consistent with Laura M. Reynolds sitting on a couch with a

16  medium to large sized black dog.  Reynolds is the listed property owner of 8436 S G Street,

17  Tacoma, according to the Pierce County Assessor-Treasurer Information Portal.  The room

18  depicted in the video is consistent with listing photos on Zillow for 8436 S G Street, Tacoma.

19  On June 10, 2020, surveillance agents observed a medium to large sized dog in the yard at

20  the same premises.  I believe this is further evidence that Channon began living at the

21  premises to be searched on or after April 9, 2020, when she listed the premises as her

22  mailing address with DOL.

23      11.    This conclusion is further confirmed by a social media post made on May 7,

24  2020, on Channon's mother's Instagram account, stating: "Margaret took her shelf to her

25  new place so now I have a floor jungle."

26      12.    In an effort to locate Channon, Seattle Police Department officers conducted

27  surveillance over the past two days at all three of the locations referenced above – the house

28  on E. Fir Street, the house in West Seattle, and the house at 8436 S. G Street, Tacoma.

Affidavit of Special Agent Gregory Heller
USAO# 2020R00569 – Page 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    During their surveillance checks, the officers never observed Channon at the E. Fir Street or
2    West Seattle houses.

3    　　　　13.    On June 10, 2020, at approximately 3:00 p.m., Seattle Police Department
4    (SPD) officers went to conduct surveillance at 8436 S. G Street, Tacoma.  Upon arriving at
5    the residence, SPD Detective Terry Bailey observed Channon standing in the front yard of
6    the house inside the front gate, along with another unknown female.  Detective Bailey had
7    previously viewed Channon's DOL photo and recognized her.  Detective Bailey specifically
8    noted that, although Channon had dark hair in her DOL photo, her hair was now blond.
9    Detective Bailey had also seen photographs from the scene of the arsons on May 30, 2020,
10   and believed Channon's hair was consistent with that of the arsonist.

11   　　　　14.    After locating Channon, Detective Bailey went to turn his vehicle around in
12   order to conduct further surveillance of the residence.  While doing so, Detective Bailey
13   briefly lost site of the residence.  Once Detective Bailey could see the residence again, he no
14   longer observed Channon and the other female in front of the house.  He did not see them
15   departing the area in a vehicle or on foot, and therefore he believed they went inside the
16   residence.

17   　　　　15.    Law enforcement officers maintained surveillance of the residence on a
18   continuous basis from the time Channon was observed through the night of June 10-11,
19   2020.  As of 1:00 a.m. on June 11, 2020, they had not observed Channon exit the residence,
20   and therefore they continue to believe that she remains inside of the residence.[1]

21   　　　　**CELLULAR PHONES OR WIRELESS COMMUNICATION DEVICES**

22   　　　　16.    During the review of the video and photographic evidence documenting the
23   arsons on May 30, 2020, on several occasions agents were able to notice the outline of a
24   distinct rectangular object in the arsonist's back pocket.  This object appears to be of similar
25   dimensions to many common smartphones.  For example, the below video still image was

---

[1] While they maintained surveillance, the SPD officers observed other individuals coming and going from the house,
including a white male between 6:43 p.m. and 7:32 p.m., another male who departed at 8:17 p.m. and returned with
groceries at 9:13 p.m., and a female who entered the house at 10:17 p.m.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

taken during the arsonist's burning of Vehicle 1.  The outlines of a rectangular object, believed to be a smartphone, can been seen in her right rear pocket.



17.     For the foregoing reasons, there is probable cause to believe that any smartphone, cell phone, or similar device found at Channon's residence or on her person will contain evidence related to the arson crimes under investigation.

18.     Cellphones or "Wireless Communication Devices" includes cellular telephones and other devices such as tablets (e.g. iPads and other similar devices) used for voice and data communication through cellular or Wi-Fi signals.  These devices send signals through networks of transmitter/receivers, enabling communication with other wireless devices or traditional "land line" telephones.  Many such devices can connect to the Internet and interconnect with other devices such as car entertainment systems or headsets via Wi-Fi, Bluetooth or near field communication (NFC).  In addition to enabling voice communications, wireless communication devices offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books" or "contact lists;" sending, receiving, and storing short message service (SMS) and multi-media

Affidavit of Special Agent Gregory Heller
USAO# 2020R00569 – Page 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  messaging service (MMS) text messages and e-mail; taking, sending, receiving, and storing

2  still photographs and moving video; storing and playing back audio files; and storing dates,

3  appointments, and other information on personal calendars.

4       19.    Based upon my training and experience, all of these types of information may

5  be evidence of crimes under investigation.  Stored e-mails and text messages not only may

6  contain communications relating to crimes, but also help identify the participants in those

7  crimes.  Address books and contact lists may help identify co-conspirators.  Similarly,

8  photographs on a cellular telephone may help identify the device user and co-conspirators,

9  either through his or her own photographs, or through photographs of friends, family, and

10  associates.  Digital photographs also often have embedded location data GPS information

11  that identifies where the photo was taken.  This location information is helpful because, for

12  example, it can show where coconspirators meet, where they travel, and where assets might

13  be located.  Calendar data may reveal the timing and extent of criminal activity.

14       20.    A cellphone used for cellular voice communication will also typically contain a

15  "call log" or "stored list of recent, received, sent or missed calls" which records the

16  telephone number, date, and time of calls made to and from the phone.  The stored list of

17  recent received, missed, and sent calls is important evidence.  It identifies telephones

18  recently in contact with the telephone user and may help identify co-conspirators, establish a

19  timeline of events and/or identify who was using the phone at any particular time.

20       21.    In addition, wireless communication devices will typically have an assigned

21  number and identifying serial number such as an ESN, MIN, IMSI or IMEI number that

22  identifies the particular device on any network.  This identifying information may also

23  include the device's assigned name (as assigned by the user) and network addresses such as

24  assigned IP addresses and MAC address.  I know based on my training and experience that

25  such information may be important evidence of who used a device, when it was used, and for

26  what purposes it may have been used.  This information can be used to obtain toll records

27  and other subscriber records, to identify contacts by this telephone with other telephones, or

28  to identify other telephones used by the same subscriber or purchased as part of a package.

Affidavit of Special Agent Gregory Heller
USAO# 2020R00569 – Page 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

22.     Many wireless communication devices including cellular telephones such as iPhones, iPads, Android phones, and other "smart phones" as well as tablet devices such as Apple iPads may also be used to browse and search the Internet.  These devices may browse and search the internet using traditional web browsers such as Apple's Safari browser or Google's Chrome browser as well as through third-party applications such as Facebook, Twitter and others that also provide the ability to browse and search the internet.  Based on my training and experience, I know that internet browsing history may include valuable evidence regarding the identity of the user of the device.  This evidence may include online user names, account numbers, e-mail accounts and bank accounts as well as other online services.  Internet browsing history may also reveal important evidence about a person's location and search history.  Search history is often valuable evidence that may help reveal a suspect's intent and plans to commit a crime or efforts to hide evidence of a crime and may also help reveal the identity of the person using the device.

23.     Cellphones and other wireless communication devices are also capable of operating a wide variety of communication applications or "Apps" that allow a user to communicate with other devices via a variety of communication channels.  These additional communication channels include traditional cellular networks, voice over internet protocol, video conferencing (such as FaceTime and Skype), and a wide variety of messaging applications (such as SnapChat, What'sApp, Signal, Telegram, Viber and iMessage).  I know based on my training and experience that there are hundreds of different messaging and conferencing applications available for popular cellular telephones and that the capabilities of these applications vary widely for each application.  Some applications include end-to-end encryption that may prevent law enforcement from deciphering the communications without access to the device and the ability to "unlock" the device through discovery of the user's password or other authentication key.

24.     Other communication applications transmit communications unencrypted over centralized servers maintained by the service provider and these communications may be obtained from the service provider using appropriate legal process.  Other applications

Affidavit of Special Agent Gregory Heller
USAO# 2020R00569 – Page 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

facilitate multiple forms of communication including text, voice, and video conferencing. Information from these communication apps may constitute evidence of the crimes under investigation to the extent they may reveal communications related to the crime or evidence of who the user of the device was communicating with and when those communications occurred.   Information from these communication apps may also reveal alias names used by the device owner that may lead to other evidence.

25.    I know based on my training and experience that obtaining a list of all the applications present on a cellphone may provide valuable leads in an investigation.  By determining what applications are present on a device, an investigator may conduct follow-up investigation including obtaining subscriber records and logs to determine whether the device owner or operator has used each particular messaging application.  This information may be used to support additional search warrants or other legal process to capture those communications and discover valuable evidence.

26.    Cellphones and other wireless communication devices may also contain geolocation information indicating where the device was at particular times.  Many of these devices track and store GPS and cell-site location data to provide enhanced location based services, serve location-targeted advertising, search results, and other content.  Numerous applications available for wireless communication devices collect and store location data. For example, when location services are enabled on a handheld mobile device, many photo applications will embed location data with each photograph taken and stored on the device. Mapping applications such as Google Maps may store location data including lists of locations the user has entered into the application.  Location information may constitute evidence of the crimes under investigation because that information may reveal whether a suspect was at or near the scene of a crime at any given moment and may also reveal evidence related to the identity of the user of the device.

27.    Based on my training, experience, and research, I know that cellular phones, such as certain phones marketed by LG and Pestigio, have "Smart Phones" capabilities that allow it to function as a wireless telephone, digital camera, portable media player, GPS

Affidavit of Special Agent Gregory Heller
USAO# 2020R00569 – Page 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

navigation device, and PDA."  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.  In my training and experience, smart phones can acts a mini-computers in that they have many of the functionalities of traditional computers.

28.     Searching a cellular phone or wireless communication device is frequently different than conducting a search of a traditional computer.  Agents and forensic examiners will attempt to extract the contents of the cellular phone or wireless communication device using a variety of techniques designed to accurately capture the data in a forensically sound manner in order to make the data available to search for the items authorized by the search warrant.  This may involve extracting a bit-for-bit copy of the contents of the device or, if such an extraction is not feasible for any particular device, the search may involve other methods of extracting data from the device such as copying the device's active user files (known as a logical acquisition) or copying the device's entire file system (known as a file system acquisition).  If none of these methods are supported by the combination of tools available to the examiner and the device to be searched, the agents and examiners may conduct a manual search of the device by scrolling through the contents of the device and photographing the results.

29.     Because multiple people may share the premises to be searched as a residence, it is possible that the premises will contain smartphones and/or cell phones that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  In seizing and searching smartphones and cell phones, the law enforcement officers executing the warrant will limit the search and seizure to devices that can reasonably be attributed as belonging to or being used by Channon, under the totality of the circumstances.

//

//

//

//

//

Affidavit of Special Agent Gregory Heller
USAO# 2020R00569 – Page 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**CONCLUSION**

2    29.    Based upon the information that has been uncovered during the course of this

3  investigation, and on the advice, experience, knowledge of other agents and officers involved

4  in this investigation, I believe these facts establish probable cause to search the location

5  identified in Attachment A for the items described in Attachment B, and to search the person

6  of MARGARET AISLINN CHANNON for tattoos.

7

8                                         Digitally signed by GREGORY
                                          HELLER
                                          Date: 2020.06.11 02:15:50
                                          -07'00'

9                              GREGORY HELLER, Affiant

10                             Special Agent, ATF

11

12    The above-named agent provided a sworn statement attesting to the truth of the

13  foregoing affidavit on the 11<u>TH</u> day of June, 2020.

14

15

16                             _____

17                             MICHELLE L. PETERSON

                               United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

Affidavit of Special Agent Gregory Heller
USAO# 2020R00569 – Page 10

# EXHIBIT 1

# (CRIMINAL COMPLAINT)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br><br>v.<br><br>MARGARET AISLINN CHANNON,<br><br>Defendant. | NO.  MJ20-336<br><br>COMPLAINT FOR VIOLATIONS<br><br>18 U.S.C. § 844(f)<br>18 U.S.C. § 844(i) |

BEFORE, Michelle L. Peterson, United States Magistrate Judge, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

### *(Arson)*

On or about May 30, 2020, at Seattle, in the Western District of Washington, MARGARET AISLINN CHANNON did maliciously damage and destroy, and attempt to damage and destroy, by means of fire, a vehicle, namely, Vehicle 1, that was used by the Seattle Police Department in interstate and foreign commerce and in an activity affecting interstate and foreign commerce, and that was in whole or in part owned and possessed by the Seattle Police Department, an institution and organization receiving Federal financial assistance.

COMPLAINT FOR VIOLATIONS - 1

All in violation of Title 18, United States Code, Section 844(f)(1) and 844(i).

## COUNT 2

### *(Arson)*

On or about May 30, 2020, at Seattle, in the Western District of Washington, MARGARET AISLINN CHANNON did maliciously damage and destroy, and attempt to damage and destroy, by means of fire, a vehicle, namely, Vehicle 2, that was used by the Seattle Police Department in interstate and foreign commerce and in an activity affecting interstate and foreign commerce, and that was in whole or in part owned and possessed by the Seattle Police Department, an institution and organization receiving Federal financial assistance.

All in violation of Title 18, United States Code, Section 844(f)(1) and 844(i).

## COUNT 3

### *(Arson)*

On or about May 30, 2020, at Seattle, in the Western District of Washington, MARGARET AISLINN CHANNON did maliciously damage and destroy, and attempt to damage and destroy, by means of fire, a vehicle, namely, Vehicle 3, that was used by the Seattle Police Department in interstate and foreign commerce and in an activity affecting interstate and foreign commerce, and that was in whole or in part owned and possessed by the Seattle Police Department, an institution and organization receiving Federal financial assistance.

All in violation of Title 18, United States Code, Section 844(f)(1) and 844(i).

## COUNT 4

### *(Arson)*

On or about May 30, 2020, at Seattle, in the Western District of Washington, MARGARET AISLINN CHANNON did maliciously damage and destroy, and attempt to damage and destroy, by means of fire, a vehicle, namely, Vehicle 4, that was used by the Seattle Police Department in interstate and foreign commerce and in an activity affecting interstate and foreign commerce, and that was in whole or in part owned and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  possessed by the Seattle Police Department, an institution and organization receiving

2  Federal financial assistance.

3      All in violation of Title 18, United States Code, Section 844(f)(1) and 844(i).

4                          **COUNT 5**

5                          *(Arson)*

6      On or about May 30, 2020, at Seattle, in the Western District of Washington,

7  MARGARET AISLINN CHANNON did maliciously damage and destroy, and attempt

8  to damage and destroy, by means of fire, a vehicle, namely, Vehicle 5, that was used by

9  the Seattle Police Department in interstate and foreign commerce and in an activity

10  affecting interstate and foreign commerce, and that was in whole or in part owned and

11  possessed by the Seattle Police Department, an institution and organization receiving

12  Federal financial assistance.

13      All in violation of Title 18, United States Code, Section 844(f)(1) and 844(i).

14      This complaint is to be presented by reliable electronic means pursuant to Federal

15  Rules of Criminal Procedure 4.1 and 41(d)(3).

16      The undersigned complainant, Gregory Heller, being duly sworn, further deposes

17  and states as follows:

18                      **INTRODUCTION**

19      1.      I, Special Agent Gregory Heller, am a duly sworn member of the Bureau of

20  Alcohol, Tobacco, Firearms, and Explosives (ATF).  I am currently assigned the ATF

21  Field Office located within the Seattle, Washington Field Division.  I have been

22  employed as a Special Agent since September 2014.  Prior to this employment, I was

23  employed as a Police Officer and Detective for Gwinnett County, Georgia, from 2007 to

24  2014.  In total, I have approximately thirteen years of state and federal law enforcement

25  experience.

26      2.      I am a graduate of Duke University in Durham, North Carolina, where I

27  received a Bachelor's of Science in Engineering (B.S.E.) in Civil Engineering.  I

28  completed a twelve week Criminal Investigator Training Program (CITP) and a fourteen

COMPLAINT FOR VIOLATIONS - 3

week Special Agent Basic Training (SABT) at the ATF National Academy/ Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.  I also completed a 23-week Gwinnett County Police Training Academy and was a Peace Officer Standards and Training (P.O.S.T.) certified peace officer in the State of Georgia.

3.      I am responsible for investigations involving specified unlawful activities, to include violent crimes involving firearms and arsons that occur in the Western District of Washington.  I am also responsible for enforcing federal firearms and explosives laws and related statutes in the Western District of Washington.  I received training on the proper investigative techniques for these violations.  I have actively participated in investigations of criminal activity, including but not limited to: crimes against persons, crimes against property, and crimes involving the possession, use, theft, or transfer of firearms.  During these investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating the presence of criminal violations.  As a law enforcement officer, I have testified under oath, affirmed to applications of search and arrest warrants, and obtained electronic monitoring orders.

4.      The facts set forth in this Affidavit are based on my own personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.  Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of a criminal complaint, it does not set forth each and every fact that I, or others, have learned during the course of this investigation.

## SUMMARY OF PROBABLE CAUSE

**A.  The Arsons of Seattle Police Department Vehicles on May 30, 2020.**

5.      On May 30, 2020, there was a large protest in the downtown area of Seattle, Washington.  Seattle Police Department (SPD) officers and other employees were in the area to direct traffic and ensure the safety of people and property.  SPD

COMPLAINT FOR VIOLATIONS - 4

officers and employees used several vehicles to respond to the protest, including the following vehicles:

*Vehicle 1:* A 2018 Ford Transit Connect van owned by SPD and assigned to the Video Unit. This van was not marked as a police vehicle, but was equipped with a police radio and flashing strobe lights. The SPD Video Unit employees used the van for transportation, to record videos of particular locations and events, and to download surveillance video provided by local businesses and residences in support of SPD criminal investigations. During the protest on May 30, 2020, SPD used and intended to use the van for transport and to document acts of violence and property destruction. Vehicle 1 was parked on 6th Avenue between Pine Street and Olive Way.

*Vehicle 2:* A 2006 Dodge Caravan owned by SPD and assigned to the Video Unit. This van was not marked as a police vehicle, but was equipped with a police radio. The SPD used and intended to use Vehicle 2 in the same manner as Vehicle 1, both generally and during the protest on May 30, 2020. Vehicle 2 was parked on 6th Avenue between Pine Street and Olive Way, slightly behind Vehicle 1.

*Vehicle 3:* A 2009 Chevrolet Express Van owned by SPD and assigned to the South Precinct Anti-Crime Team. This van was not marked as a police vehicle, but was equipped with emergency lights and a police radio. The SPD used Vehicle 3 for the general purpose of transporting police officers and law enforcement equipment. During the protest, Vehicle 3 was parked on 6th Avenue between Pine Street and Olive Way, immediately behind Vehicle 2.

*Vehicle 4:* A 2016 Ford Explorer owned by SPD and used as a patrol car. Vehicle 4 was not marked, but was equipped with a push bumper, emergency lights, police radio, and other police equipment. During the protest, Vehicle 4 was parked on 6th Avenue between Pine Street and Olive Way, immediately behind Vehicle 3.

*Vehicle 5:* A 2017 Ford Explorer owned by SPD and used as a patrol car. Vehicle 5 was not marked, but was equipped with a push bumper, emergency lights, police radio, and other police equipment. During the protest, Vehicle 5 was parked on Pine Street near 5th Avenue.

COMPLAINT FOR VIOLATIONS - 5

6.      As described in detail below, during the protest on May 30, 2020, Vehicles 1, 2, 3, 4, and 5 were all damaged and destroyed by fire.  After the arsons, investigators from SPD, FBI, and ATF, including myself, examined the damaged vehicles.  Vehicles 1, 3, 4, and 5 were completely destroyed by fire.  Most of what remained were the metal frames of the vehicles.  Vehicle 2 was also heavily damaged and is no longer operable, with the interior destroyed and the engine compartment burned.  ATF Special Agent and Certified Fire Investigator Dawn Dodsworth examined the all five of vehicles.  She classified the fires in Vehicles 1, 3, 4, and 5 as "incendiary," meaning they were caused by human action.  She further determined that the fire in Vehicle 2 was caused by the natural extension and expansion of the fire in Vehicle 1 into Vehicle 2.

7.      The Seattle Police Department is involved in interstate and foreign commerce and in activities affecting interstate and foreign commerce.[1]  The Seattle Police Department also is an institution and organization that receives Federal financial assistance.  I have received information from SPD's Chief Administration Officer, who oversees the SPD Grants and Contracts Unit, regarding the numerous federally funded grants SPD is currently receiving.  In summary, SPD is presently receiving funding from a variety of federal agencies, including the Department of Justice, the Department of Homeland Security, and the Federal Emergency Management Agency (FEMA).  Collectively, these grants total millions of dollars of federal funding provided to SPD in support of a variety of SPD's core duties and missions, including, but not limited to:

[1] *See United States v. Odom*, 252 F.3d 1289, 1294 (11th Cir. 2001) ("The legislative history of § 844(i) reveals that the statute was crafted specifically to include some non-business property such as police stations and churches.") (citing *Russell v. United States*, 471 U.S. 858, 860 (1985)); *United States v. Laton*, 352 F.3d 286, 300 (6th Cir. 2003) ("When it crafted § 844(i) to encompass the arson of police stations, Congress recognized that the provision of emergency services by municipalities can affect interstate commerce in the active sense of the phrase.") (citing *Jones v. United States*, 529 U.S. 848, 853 n.5 (2000); *Russell*, 471 U.S. at 860–61); *Belflower v. United States*, 129 F.3d 1459, 1462 (11th Cir.1997) (holding that § 844(i) covered the bombing of a police vehicle which a local sheriff's deputy used in his law enforcement responsibilities and that destruction of a police car had "a significant impact on interstate commerce" because the deputy patrolled traffic and made arrests on an interstate highway, issued citations to out-of-state drivers, participated in interstate narcotic investigations, assisted out-of-state authorities in apprehending suspects, recovered stolen property from other states, and attended law enforcement training sessions in other states).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Enhancing the safety of the community in the event of terrorist threats, active shooter threats, natural disasters, and the gathering of information helpful to law enforcement and the community regarding these sorts of serious threats;

- Providing crime prevention strategies and essential services to elderly, non-English speaking residents, refugees, deaf, blind and developmentally disabled residents of Seattle and working with communities to decrease crime by developing, implementing and coordinating crime prevention programs;

- Bolstering security measures related to the protection of the Port of Seattle;

- Funding the investigations of offenses involving acts of terrorism, chemical, radiological, or biological attacks, crimes against children, and human trafficking; and

- COVID Emergency Stimulus Funding used to pay for things such as personal protective equipment for officers; funding to backfill for officers testing positive for COVID or in quarantine; and the cost of providing protection for lives and property in the event of protests against statewide shelter-in-place orders or re-opening guidelines.

**B. Channon's Involvement in the Arsons of the SPD Vehicles.**

8.      Investigators with SPD, FBI, and ATF have obtained and reviewed videos and photographs taken during the events surrounding the burning of the five SPD vehicles on May 30, 2020.  This video and photographic evidence came from various sources, including SPD personnel on scene, neighboring building surveillance cameras, footage aired by local news media outlets, publically reviewable social media posts, and from individuals who attended the protest and took their own photographs and video.

9.      Based on a review of this photographic and video evidence, FBI and ATF special agents identified a suspect who was involved in the arsons of Vehicles 1, 2, 3, 4, and 5.  The suspect is a Caucasian female with long hair.  The majority of her hair was blond, but appeared to have dark brown roots.  She had what appeared to be tattoos on

COMPLAINT FOR VIOLATIONS - 7

her right shoulder, left elbow, and left bicep.[2]  She was wearing a white and black striped scarf-type face covering, a black shirt, black pants, light colored socks (that were mismatched), and black shoes.  She also wore a black backpack on her back.  The backpack had a rectangular top flap that was secured by vertical buckles.  In some of the photos and videos, the female suspect was wearing a black hooded sweatshirt with a zippered front, and in others she had a light colored striped garment wrapped around her waist.  As described below, investigators have subsequently identified this female suspect as the defendant, Margaret Aislinn Channon.

 

Open source social media                 News footage                 SPD Video

10.    A review of video footage shows that at approximately 4:06 p.m., Vehicle 5 was damaged by acts of vandalism conducted by several unknown suspects (not Channon).  These unknown suspects broke Vehicle 5's windows and doors and caused a fire on the ground underneath the front passenger door.  An unknown suspect is seen placing a cardboard box into the flames underneath the car.  Channon then approached Vehicle 5 and threw an item of black clothing into the fire.  Moments later, Channon held

---

[2] The female suspect had a distinct tattoo on her right shoulder, which appeared to be a design with two halves, connected in a shape similar to an "X-pattern" in the middle.  In addition, the female suspect had an irregular shaped tattoo outline near her right elbow, and another tattoo on the outside of her left elbow that may extend up her forearm.

COMPLAINT FOR VIOLATIONS - 8

a spray can up to a small flame and lit the exhaust.[3]  Channon sprayed the rear hatch of the Vehicle 5 for several seconds, until the flame went out.  Channon then re-ignited the can's exhaust.  She leaned into the open rear door of the vehicle and sprayed the back seat with flame.  Shortly thereafter, she left the area of Vehicle 5.  After she left, the vehicle was smoking heavily, and flames were visible inside.  Shortly thereafter, flames filled the passenger compartment and rose well above the roof of the vehicle.  The fire progressed until Vehicle 5 was fully engulfed in flames.

11.     Video footage shows that after leaving Vehicle 5, Channon went to the Old Navy store across the street at 511 Pine Street.  A crowd was smashing the windows, throwing items at the store, and stealing items from inside the store.  The video shows Channon entering Old Navy through the smashed storefront.  She left the store moments later, carrying a light colored, striped long sleeve shirt.

12.     Various videos and photographs that I have reviewed show that Channon (now with the stolen striped shirt wrapped around her waist) next approached the passenger side of Vehicle 3 and began striking it with something she held in her right hand.  Channon stood at the smashed passenger window and sprayed flaming exhaust from a can into Vehicle 3.  Smoke then started rising from the vehicle.  She then ran away from Vehicle 3 towards Vehicle 4 with the flaming can in her hand.  Channon next sprayed flames into the front passenger window of Vehicle 4 and smoke began to emanate from Vehicle 4.

13.     Video shows Channon then ran back towards Vehicle 3.  Channon no longer had the light colored striped shirt around her waist, having discarded it in or around Vehicle 4.  Channon stood next to Vehicle 3 and sprayed flaming exhaust from a can into the passenger window of Vehicle 3.  Video footage shows smoke rising from Vehicle 3.

---

[3] Based on my training and experience, I know that many pressurized cans contain a propellant that is flammable.  If the aerosol exhaust from the can is ignited with a flame, and the nozzle is held in the open position, a continuous shooting flame can be produced.  This appears to be how Channon burned Vehicles 1, 3, 4, and 5.

COMPLAINT FOR VIOLATIONS - 9

14.    Additional video footage shows that Channon next approached the driver's window of Vehicle 1 and ignited the exhaust from an aerosol can, causing it to spew flames.  She then held the flaming can inside the van, first aiming the flame towards the driver's seat and then towards the headliner.  After several seconds, the flame went out. Channon brought the can back towards her body and appeared to reignite it.  She then aimed the flame at the driver's seat for approximately 13 seconds until the flame went out again.  Channon lit the exhaust from the can again and, for several seconds, aimed it at the seat and then the headliner.  When the flames again went out, Channon again lit the exhaust from the can and aimed it at the seat for another second, until the flames went out.

15.    At that point, the video footage shows Channon handing the can to an unknown male subject.  While she was doing so, a glow, consistent with fire, can be seen coming from inside Vehicle 1.  The male ignited the exhaust from the can and sprayed flames into Vehicle 1 for several seconds.  At approximately 4:20 p.m., Channon and the male ran down 6th Avenue towards Olive Way.  In other video footage, Channon can be seen in front of the Verizon store at the corner of 6th Avenue and Olive Way.  Channon smashed the windows of the store with something she was holding in her right hand.

16.    Immediately after Channon ran away from Vehicle 1 (as noted above) the flames inside of Vehicle 1 expanded and spread to the adjacent Vehicle 2.  Video footage shows that the fires in vehicles 1, 2, 3, and 4 continued to burn until each of the cars were fully engulfed in flames.  Flames from the vehicles extended vertically from the vehicles and at times flared high enough to touch the roof/awning of the Nordstrom store in front of which the vehicles were parked.

**C. The Identification of Channon as the Arsonist.**

**1. Photographs of Channon at the Protests on May 29, 2020.**

17.    After the arsons, FBI and ATF special agents commenced an investigation in an effort to identify the female arsonist depicted in the above-referenced videos and photographs.  Among other things, FBI agents contacted a Seattle resident who posted on

his social media account a photograph of the female arsonist setting fire to Vehicle 3. On June 8, 2020, FBI special agents met with this individual and he provided them with numerous additional photographs he had taken of the female arsonist and other individuals at the protests in downtown Seattle on Friday, May 29, 2020, and Saturday, May 30, 2020 (the day of the arsons).

18.     On the night of May 29, 2020, at the protest in Seattle, this individual took photographs of a female who, as described below, has been identified as Channon. By comparing the photos to footage taken by SPD body worn cameras, I have been able to determine that these photos of Channon were taken on May 29, 2020, at approximately 9:30 p.m. The photos depict a line of police officers and protestors (including Channon) facing each other in the area of 5th Avenue between James Street and Jefferson Street. Channon's back is to the camera and she has her hands up, palms facing the police officers. Because these photographs are of very high quality, agents were able to zoom in on the female's left hand and see that she had a distinctive tattoo. Specifically, she had the letters "W-A-I-F" tattooed on the fingers of her left hand, with the "W" on her index finger; "A" on her middle finger; "I" on her ring finger; and "F" on her pinkie finger. The letters were oriented such that the bottom of the letters faced towards her fingertips. Also visible on the suspect's left hand was a heart tattoo on her middle finger between the "A" and the fingertip.

 

19.     After reviewing the "W-A-I-F" tattoo, agents checked numerous jail booking systems in Washington and Oregon for females with hand or finger tattoos spelling "W-A-I-F."  There were no matches.  Agents also conducted searches over publically available social media accounts and located Facebook posts relating to a missing person report from the Brewster County Sheriff's Department in Texas.  These posts indicated that a person named Margaret Aislinn Channon had gone missing in February of 2019.  Channon was described in one post as a white female who was five feet and five inches tall with "tattoos on her leg shoulder and left wrist."  Another post indicated that Channon had "many tattoos, including WAIF on fingers."

20.     Agents reviewed records of the Washington Department of Licensing (DOL) and confirmed that Margaret Aislinn Channon currently lives in Washington.  The photograph of Channon on file with the DOL (below) matches the photographs of Channon on the above-referenced missing person report.



21.     Agents were able to locate a publically viewable Instagram page ("Maggotslaw") with the user name of "Margaret Aislinn Channon."  The user of this account posted numerous photographs of herself that match Channon's DOL photograph. Moreover, on March 25, 2015, the user posted a photograph that depicted a left hand with the same "W-A-I-F" and heart tattoos that were seen on the female protestor on May 29, 2020.  Additional photographs posted on the "Maggotslaw" Instagram account depicted Channon holding her left hand so that parts of the "W-A-I -F" and heart tattoos were visible.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



**2. The Comparison of Photos of the Arsonist on May 30, 2020, with Photos of Channon on May 29, 2020, and other Known Photos of Channon, Confirms that Channon was the Arsonist.**

22.     Having identified Channon as being at the protest on May 29, 2020, agents then compared the photos of Channon taken on May 29th and other known photos of Channon with images of the arsonist on May 30, 2020.  For the reasons set forth below, this this comparison confirmed that Channon was, in fact, the arsonist.

23.     First, the arsonist was wearing nearly the identical clothing that Channon wore on May 29th.  The matching clothing included a black hooded sweatshirt with a vertical zipper in the front, black tight-fitting pants, a black backpack, black shoes, and distinctive mismatched socks.  Regarding the socks, both Channon (on May 29) and the arsonist (on May 30) had on their right foot a green/grey sock with a triangle pattern and on their left foot a pink/peach sock with a red or pink pattern.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14







15          May 30, 2020                    May 29, 2020

16

17          24.      Second, both the arsonist and Channon in her DOL photograph have unique

18   eyebrows.  As depicted in Channon's DOL photograph, she has both tattooed eyebrows

19   and natural eyebrows, with the two failing to line-up perfectly.  This results in uneven

20   eyebrows that are thicker and thinner in certain places and are thus irregularly shaped.

21   Specifically, the tattooed portion of Channon's right eyebrow has a steep, sharp peak that

22   is not seen on her left eyebrow.  This unique eyebrow feature is also seen on the arsonist

23   in still frames of a video taken on May 30, 2020, while the arsonist was outside the Old

24   Navy store (after burning Vehicle 5).

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



Arsonist on May 30                                                    Channon's DOL photo

25.     Third, as noted above, the arsonist had a unique "X-pattern" tattoo on her right shoulder.  Agents located a second Instagram page ("qualitiesofass") that appears to be used by Channon under the user name "Marge" (her first name is Margaret).  This Instagram page has numerous photos of Channon, including one that clearly depicts a tattoo on her right shoulder that appears to match the tattoo on the arsonist.  This photograph appears to have been taken into a mirror, so the right and left sides are reversed.  (The viewer can tell Channon's right side by the steep incline on her right eyebrow tattoo.).  On Channon's right shoulder, there is a tattoo with various lines that include an X-shape pattern towards the middle of the shoulder.  This tattoo appears to match the tattoo seen on the arsonist's right shoulder as she was burning Vehicle 1.



Instagram photo on "qualitiesofass"



Arsonist on May 30

COMPLAINT FOR VIOLATIONS - 15

26.      Fourth, agents found additional photographs of Channon on a third Instagram account that further depict her with tattoos matching those of the arsonist. This Instagram account ("lapacurb") contained several photographs of Channon.  One relevant photograph showed the front portion of the distinctive "X-pattern" tattoo on Channon's right shoulder.  A second photograph showed that Channon has a tattoo on her left bicep and the outside of her left elbow.  The location and general character of these tattoos appears to match tattoos seen on the arsonist during the arsons on May 30, 2020 (the tattoo on her left bicep is more apparent on the video from which the below still shot is taken).



Instagram photo on "lapacurb"



Instagram photo on "lapacurb"



Tattoo on arsonist's left elbow



Tattoo on arsonist's left bicep

COMPLAINT FOR VIOLATIONS - 16

## CONCLUSION

27.     Based on the foregoing, I respectfully submit that there is probable cause to believe that MARGARET AISLINN CHANNON committed the above-referenced offenses.

> Digitally signed by
> GREGORY HELLER
> Date: 2020.06.11
> 01:35:47 -07'00'

GREGORY HELLER
Special Agent, ATF

The above agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 11th day of June, 2020.  Based on the Complaint and the sworn statement, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

MICHELLE L. PETERSON
United States Magistrate Judge

COMPLAINT FOR VIOLATIONS - 17